Please call the next case. Next case, 5-12-0203-WC, Nathaniel O'Bannon v. Workers' Compensation Comm'n Mr. Calvo, you may proceed. Since I used quite a bit of time this morning, I'll try to be brief on this one. This is another Manifest Way case. Nathan O'Bannon is a bus driver who drove a bus for Madison County Transit. He drove in an orthopedic-type chair that they built for buses now that are filled with air. What was happening to Mr. O'Bannon is his chair would deflate, and on occasion he would call the company and say, My chair's deflated, and they'd send another bus out. Then there were occasions when they didn't have another driver and they couldn't get another bus out, so he'd drive his entire shift while seated on the floor of the bus, which he testified that he had to go over railroad tracks and bumps and experienced a lot of problems with his back. Now, Dr. Ali, who's the neurologist that he saw, who was his treating doctor, did an IME, which he reviewed, and felt that Mr. O'Bannon needed to see a neurosurgeon for further workup. And this case is not about permanency. It's a 19B case, and it involves TTD and the issues or causal connection in TTD. So then, for an IME, the respondent sends him to the famous Dr. Sherwin Wayne, who I'm sure most of you are acquainted with. Dr. Wayne says, My client is a 70-year-old, 8-year-old male suffering from deep vein thrombosis. And then on cross-examination, he admits that he understands now, based upon what we're telling him, that the client, Mr. O'Bannon, is 50 years of age and has no deep vein thrombosis. And this is in the record on page 452. And on the circuit court, Judge Crowder sort of gets it. She says, Well, Dr. Wayne's not credible. But not credible as to that part of the testimony. But then she finds that he is credible as to the physical examination conducted. It's just my assertion. He's either credible or he's not. If he's not credible, he's not credible as to his opinion of causal connection. Another thing on cross-examination he admits, he had no knowledge that the seat had deflated. That wasn't part of the history. He didn't ask that. He wasn't told that. He had no knowledge of that. He had no knowledge that the plaintiff or petitioner had to sit on the floor. He was told by the responding attorney that if he sat in his lumbar chair, would that be better? And the doctor said yes. But there was nothing from the other side about the deflated seat. So based upon that part of his testimony, the 78-year-old testimony, the deep vein thrombosis testimony, I think you have to throw out Wayne's testimony in its entirety as not credible, which leads us to the only doctor. Actually, this is Dr. Andrew Wayne. Excuse me? This is Dr. Andrew Wayne, wasn't it? As opposed to the famous Dr. Sherwin-Wayne. Oh, I thought it was Sherwin-Wayne. It's Dr. Andrew Wayne? The now-emphasis Andrew Wayne. I don't know. This may be a relative of Dr. Sherwin-Wayne. Andrew Wayne, was it? It is Andrew Wayne. Well, regardless, you either have a credible doctor or you don't, and I think the judge just made a mistake in saying there's partial credibility. I don't think there can be such a thing. And if that reaches the same conclusion, then the only medical evidence is that there is causal connection. And I'm not going to politicize it, but this is Judge Nolesky. He was getting the same knocks on the door as he got with the prior case. And I understand what you said about Arbitrator T before, but she was getting the same knocks on the door as Andy was at the time, and they sort of switched their view of what they were going to do in order to try to save the jobs. But that's not what's before you. What's before you is the manifest way I understand that. I want to also apologize for saying I practiced law 48 years. That would have made me 15 years old when I got my license, and I was 25, so it's only 38 years. And the other thing I'd like to apologize for is one of my prior colleagues referring to you as not as justices for something else. I'm sorry. We were aware of that. Thank you, Justice. There's nothing wrong with passion for your profession. Good practice. That's right. Good afternoon. May it please the Court, Counsel. My name is Catherine Whitaker. I represent Agency for Community Transit. Talked about credibility a little bit with Dr. Wayne. Yes, there was the incident. Was it Andrew Wayne? It was Andrew Wayne. Okay, wasn't sure. Yes. There was the issue. There was an intake form filled out that got in the records that was not part of Mr. O'Bannon's. That absolutely is correct. That was addressed in his deposition. He did state, and I believe the commission even stated, Dr. Wayne said that this did not change his opinion, that the lower back complaints were still not related to the work activities. So he was confronted with that problem, admitted to it, and the commission considered it. Correct. And actually the commission in their decision state that they agree with the decision of the arbitrator, but clarified that to the extent it relied on Dr. Wayne, it only relied on those opinions he rendered based on petitioner's record and his examination of the petition. Do you see it problematic? I mean, he examined this claimant. He was 50-some years of age. Correct? Yes. And he's starting to talk about a medical record of a 78-year-old's father? I wasn't at the trial. Maybe he looks really old. You're not going against the judicial orders, are you? I'm not asking for it. I do see that as a little bit of a problem, and I do believe it was addressed in his deposition. And I don't know that the age was addressed until the time of the deposition. He just noted he had the deep vein thrombosis. He had the radicular pain down his left leg. He said that could be the cause of it. However, he did also have the bulging disc because of this progressive disorder, and he said it wouldn't change his opinion whether it was caused by the deep vein thrombosis or the degenerative progressive disc disease. Was there any previous argument about aggravating a pre-existing condition? Was that made before the arbitrator or the commission? Yes. Yes, it was. And what were the findings on that argument? Well, we have, based on the extensive – I mean, this guy started treating for his low back in 2003, and they're claiming a date of 2008. So we have five years of treatment. Where not one person related his back complaints to his job. And Dr. Wayne did not either. In fact, he said the – and this is on page 214 of the record – the aging process of the lower back is something that will occur regardless of what one is doing in life. He said it had nothing to do with his employment activities. What's Dr. Wayne's specialty? He is not a psychiatrist. Clarify that. Yes. He is a physiatrist. A physiatrist. And what is that? He – and it's in his deposition as well – he states that he does – deals primarily with medical conditions of the spine. In fact, he said 70% of his work deals with medical conditions. He doesn't do surgeries, but he does do the injections and the pain management. Is he board certified? Yes, I believe so. He's a medical doctor. What? He's a medical doctor. He is a medical doctor, yes. He's not a psychiatrist. Or a chiropractor. Correct. Correct. Or a podiatrist. Or a podiatrist. So in addition, we have the petitioner who said five years of treatment. In 2007, he sees Dr. Metzler, who by his own choosing goes and sees him. Dr. Metzler diagnoses him with this progressively increasing low back and pain. Again, doesn't relate it to work. Fast forward two years, we sent him to Dr. Wayne, Andrew Wayne, and he says the same thing, that it's not related to work. It's a progressive disorder. It doesn't matter if you're sitting on a bus seat, if you're whatever. It's still going to progress. It's still going to bother you. And therefore, we believe that there's sufficient evidence based on the past medical history, Dr. Wayne's report and opinion, that provides a sufficient basis for the commission's decision that there was no accident. Thank you, counsel. Counsel, you may reply. We're not claiming an accident. We're claiming that his work and the manner in which he had to perform it caused an aggravation of his long-term back disease problem to the point where he had to be taken off work by a neurologist, not a physiologist, and wrote a prescription to see a neurosurgeon, not a physiologist, to see if he would read the MRI and see if any active further treatment needed to be done. Somehow, how are we going to get this guy back to work? That's the question. And that's all that was trying to be addressed. And so then, rather than go through that and try to get our guy back to work and healed, as fast as we can, we get an IME and deny the claim. It's as simple as that. Thank you. Thank you, counsel. This matter has been taken under advisement. This position shall issue the court's standing brief recess.